STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. RICHARD E. SCOTT, RESPONDENT.

564 N.W.2d 588

Filed June 20, 1997.    No. S-96-852.

Kent L. Frobish, Assistant Counsel for Discipline, for relator.

Paul E. Galter, of Butler, Galter, & O'Brien Law Firm, for respondent.

WHITE, C.J., CAPORALE, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

PER CURIAM.

On May 16, 1996, the Committee on Inquiry of the First Disciplinary District of the Nebraska State Bar Association (Bar Association) recommended that formal charges be filed against Richard E. Scott for violating his oath of office as an attorney and violating the following provisions of the Code of Professional Responsibility:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

. . . .

(6) Engage in any other conduct that adversely reflects on his or her fitness to practice law.

. . . .

DR 6-101 Failing to Act Competently.

(A) A lawyer shall not:

. . . .

(2) Handle a legal matter without preparation adequate in the circumstances.

(3) Neglect a legal matter entrusted to him or her.

. . . .

DR 7-101 Representing a Client Zealously.

(A) A lawyer shall not intentionally:

. . . .

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he or she may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.

(3) Prejudice or damage his or her client during the course of the professional relationship, except as required under DR 7-102(B).

. . . .

DR 7-102 Representing a Client Within the Bounds of the Law.

(A) In his or her representation of a client, a lawyer shall not:

. . . .

(5) Knowingly make a false statement of law or fact.

. . . .

(8) Knowingly engage in other illegal conduct or conduct contrary to a Disciplinary Rule.

The Disciplinary Review Board (board) for the Bar Association subsequently determined that with regard to the

allegations contained in the formal charges, there were reasonable grounds for discipline, and that a reprimand by the board would not be an appropriate remedy. The board accordingly submitted the formal charges to the Clerk of the Nebraska Supreme Court in August 1996. Scott filed a general denial to the formal charges.

On January 7, 1997, a referee appointed by this court conducted a formal hearing. The referee found that the following facts were established by clear and convincing evidence:

Scott was admitted to the practice of law in the State of Nebraska in February 1972. At all times relevant to this case, he was engaged in private practice in Lincoln, Nebraska.

On March 17, 1994, Scott was retained by Daniel Wheeler to represent Wheeler in a claim before the Nebraska Workers' Compensation Court against Wheeler's former employer, Lincoln Regional Center, and the State of Nebraska (defendants). Scott filed a petition on behalf of Wheeler in the Workers' Compensation Court on March 22, but at no time during the duration of the case did Scott provide defendants with mandatory disclosure statements. Defendants filed an answer and served Scott with interrogatories and two sets of mandatory disclosure statements. Wheeler was later deposed by defendants' attorney, Jill Schroeder, on May 23, 1994. In his answers to interrogatories and questions asked during his deposition, Wheeler identified Dr. T.J. Tegt as his physician who would testify on his behalf at trial. Further, Wheeler identified the Veterans' Administration as having relevant medical records regarding his injuries which were the subject of his case.

The trial was set for July 27, and notice was sent to Scott. On July 7, Scott filed a motion for continuance, alleging that "the Plaintiff is in the State of Alaska for until [sic] the first week in August and will be unable to attend the hearing." The motion was sustained and the trial date was continued to August 8, a day certain. Notice of said continuance was mailed to Scott.

On August 8, Scott failed to attend the trial because he was attending a hearing in Kearney, Nebraska, and instead sent attorney Brian Watkins to represent Wheeler. Watkins was neither Scott's partner nor his employee. Moreover, Wheeler had

never been informed that Scott would not be attending the trial or that Watkins would be appearing in Scott's place.

During the hearing, Watkins requested that the court continue the trial to a date in October 1994 for the reason that Wheeler was "in the State of Alaska until the first week of October 1994 and will not be able to attend any hearings in the State of Nebraska until said date." Watkins' request was denied. In denying the request, the court noted that a previous request for continuance had stated that Wheeler would be available during August and took judicial notice of the fact that Scott had not filed any of the mandatory disclosures on behalf of his client. On August 12, the court entered an order of dismissal, dismissing the case with prejudice. Scott was sent a copy of the order.

In October 1994, Scott met with Wheeler to discuss a separate claim which was pending with the Social Security Administration. Wheeler had signed a retainer agreement to retain Scott's services in the Social Security case.

On October 31, Scott received correspondence from Ronald Olds of the Department of Veterans Affairs (Veterans Affairs). According to the letter, Veterans Affairs was claiming a subrogation interest in Wheeler's workers' compensation claim. Included with the letter were Wheeler's medical records from the Veterans' Administration hospital in Lincoln, Nebraska.

By letter dated November 7, 1994, Scott informed Wheeler of the subrogation claim and stated that he "will try and go forward with your case however, I'm certainly not making any guarantees because of the lateness of the delivery of these items from the Veteran's [sic] Administration."

In December 1994, Wheeler wrote to Scott asking for information regarding his workers' compensation case. Responding to Wheeler's inquiry by letter dated December 28, 1994, Scott stated that "because of the lateness of the information from the Veteran's [sic] Administration, we are having a very difficult time with your case." There was no indication in the letter that the case had been dismissed.

Scott received a request from Veterans Affairs in January 1995 to provide an update on Wheeler's workers' compensation claim. In a letter dated February 5, 1995, Scott stated that the

court had dismissed the claim but that he was still working on the claim.

Scott received another request in April 1995 to provide an update on the workers' compensation claim. Scott responded shortly thereafter. In his response, Scott stated that "Mr. Wheeler's matter has been submitted to the Worker's [sic] Compensation Court. To date, we have not received a result as yet, but will keep you informed as to the status of this claim." As of the time of the letter, no new evidence had been submitted to the court, nor was anything pending before the court.

In July 1995, a representative from Veterans Affairs again asked Scott to provide an update with regard to Wheeler's workers' compensation claim. According to Scott, in a letter dated July 19, 1995, "This is to inform you that Mr. Wheeler's Social Security case is still pending and to date we have not heard anything concerning this matter." Wheeler's workers' compensation claim was never addressed.

Scott received a fourth request from Veterans Affairs seeking an update of the workers' compensation claim on October 2. Scott stated in a letter dated October 5, 1995, "Please be advised that the Workers' Compensation matter relating to Mr. Wheeler is going to be dismissed but, the Social Security matter is still ongoing."

On December 26, Wheeler notified Scott that he was terminating Scott's representation and asked Scott for a copy of all of his file materials. A copy of such file materials was provided by Scott on December 29.

Wheeler filed a complaint against Scott with the Counsel for Discipline for the Nebraska State Bar Association on January 17, 1996. Counsel forwarded said complaint to Scott, who replied by letter dated January 23, 1996, stating,

> The Workers' Compensation case was scheduled and continued twice because of [Wheeler's] request. The final time the matter was set, Mr. Wheeler did not show up, which was in August of 1994 and the matter was dismissed at that time. We would have had a very difficult time of proving our case, since we had no doctor tieing [sic] the injury to a work related accident and without his testimony I felt that there would be no need to go further.

Pursuant to the findings of the referee, Scott's response to the complaint was not factually correct or was misleading in the following respects: (1) Wheeler never requested a continuance of his case; (2) Wheeler did not show up at the trial because he was never given notice of the trial date; and (3) the workers' compensation case was dismissed because the judge would not grant the request for continuance made at the time the trial was scheduled to begin, Watkins was not prepared for trial, and Scott failed to provide defendants with the mandatory disclosure statements.

In a section of the referee's report designated as "Additional Findings of Fact," the following findings were made: (1) Scott entered into an attorney-client relationship with Wheeler to pursue a workers' compensation claim, (2) the case was initially filed to protect against the possibility of missing an impending statute of limitations, (3) there was no evidence demonstrating that Wheeler's injury was caused by his employment, (4) Scott could not have filed mandatory disclosures which would have supported the claim, (5) either the case should have been dismissed with the client's consent or Scott should have withdrawn, (6) nothing Scott had done or failed to do in the Workers' Compensation Court resulted in injury to Wheeler, (7) Scott misrepresented that Wheeler would be returning to Lincoln on a certain date, (8) Scott had no basis for stating a date upon which Wheeler would return and had a weak basis for concluding that Wheeler was in Alaska, and (9) Scott made a series of misrepresentations to representatives of Veterans Affairs with regard to the status of the workers' compensation case.

At the conclusion of the referee's statement of facts, the referee held that the Bar Association had established by clear and convincing evidence that Scott violated DR 7-102(A)(4), (5), and (8) by deliberately misrepresenting to the Workers' Compensation Court that Wheeler was "in the State of Alaska for until [sic] the first week in August." The Bar Association also established by clear and convincing evidence that Scott violated DR 7-102(A)(4), (5), and (8) by deliberately misrepresenting the status of the workers' compensation matter to a representative of Veterans Affairs.

The referee recommended that Scott be suspended from the practice of law for a period of 30 days for such violations. In

reaching its recommendation, the referee considered that the misrepresentation was made to a court. He found mitigating that Scott did not receive any fee for work done for Wheeler and that the misrepresentations appeared to have been done with poor judgment in an effort to help maintain the viability of Wheeler's workers' compensation claim at no benefit to Scott. Finally, the referee was particularly troubled by the fact that Wheeler threatened to go to the Bar Association if Scott charged him a fee.

Neither party filed exceptions to the referee's report. Consequently, the parties were ordered by this court on February 19, 1997, to file simultaneous briefs regarding the discipline to be imposed based upon the referee's findings.

To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following facts: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Malcom*, 252 Neb. 263, 561 N.W.2d 237 (1997). Further, any violation of the ethical standards relating to the practice of law, or any conduct which tends to bring the courts or legal profession into disrepute, constitutes grounds for suspension or disbarment. *State ex rel. NSBA v. Zakrzewski*, 252 Neb. 40, 560 N.W.2d 150 (1997).

In the present case, we recognize that mitigating circumstances certainly exist: (1) Scott's actions were done in an effort to help maintain the viability of Wheeler's workers' compensation claim and not to benefit himself, (2) at no time did Scott receive a fee for representing Wheeler in the compensation matter, and (3) Scott's conduct did not result in injury to Wheeler. However, these mitigating factors fail to overcome the fact that Scott deliberately lied to a court and to Veterans Affairs. Although we encourage all attorneys to zealously represent their clients, such advice cannot be construed to permit attorneys to deceive a court of law or other interested entities.

Considering the gravity of Scott's actions, we hereby suspend Scott from the practice of law for a period of 1 year, effective immediately.

JUDGMENT OF SUSPENSION.

WRIGHT, J., not participating.