STATE OF NEBRASKA EX REL. NEBRASKA STATE BAR ASSOCIATION, RELATOR, V. SHELDON M. GALLNER, RESPONDENT. STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE OF THE NEBRASKA SUPREME COURT, RELATOR, V. SHELDON M. GALLNER, RESPONDENT.

638 N.W.2d 819

Filed February 8, 2002. Nos. S-00-854, S-01-088.

John W. Steele, Assistant Counsel for Discipline, for relator.

Roger J. Kuhle and Joseph D. Thornton for respondent.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## NATURE OF CASE

In an attorney disciplinary proceeding, the Iowa Supreme Court suspended Sheldon M. Gallner's license to practice law in

the State of Iowa for 6 months. See *Bd. of Prof. Ethics & Conduct v. Gallner*, 621 N.W.2d 183 (Iowa 2001). Both formal charges (case No. S-00-854) and a motion for reciprocal discipline (case No. S-01-088) have been filed against Gallner in this court. This opinion will dispose of both cases.

## STANDARD OF REVIEW

■ A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee; provided, however, that where the credible evidence is in conflict on a material issue of fact, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another. *State ex rel. NSBA v. Mefferd*, 258 Neb. 616, 604 N.W.2d 839 (2000).

■ Although a judicial determination of attorney misconduct in another state is generally given conclusive effect, this court is entitled, in a reciprocal discipline action, to independently assess the facts and independently determine the appropriate disciplinary action to be taken against the attorney in this state. *State ex rel. NSBA v. Radosevich*, 243 Neb. 625, 501 N.W.2d 308 (1993).

## FACTS

Gallner was admitted to the practice of law in the State of Nebraska on August 18, 1989. He practiced law in both Nebraska and Iowa. After a disciplinary proceeding was brought against Gallner in Iowa, the Iowa Supreme Court suspended his license to practice law there effective January 18, 2001. See *Bd. of Prof. Ethics & Conduct v. Gallner, supra*. Gallner was reinstated by the Iowa Supreme Court on July 18. Based on a motion for reciprocal discipline, this court suspended Gallner's license to practice law in Nebraska on February 14.

The charges in Nebraska were initially presented to the Committee on Inquiry of the Second Disciplinary District. On January 6, 2000, both the Counsel for Discipline and Gallner appeared before the Committee on Inquiry. After finding reasonable grounds to believe that Gallner had engaged in conduct that violated the Code of Professional Responsibility, the committee sent formal charges to the Disciplinary Review Board.

The Disciplinary Review Board filed amended formal charges with this court on August 17, 2000. Gallner was charged with violating Canon 1, DR 1-102(A)(1), (4), and (5), and Canon 7, DR 7-102(A)(5), of the Code of Professional Responsibility, which provide as follows:

DR 1-102 Misconduct.

(A) A lawyer shall not:

(1) Violate a Disciplinary Rule.

. . . .

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(5) Engage in conduct that is prejudicial to the administration of justice. . . .

. . . .

DR 7-102 Representing a Client Within the Bounds of the Law.

(A) In his or her representation of a client, a lawyer shall not:

. . . .

(5) Knowingly make a false statement of law or fact.

Gallner filed an answer on September 29.

A hearing was held before a court-appointed referee on January 3 and 11, 2001. The referee found that Gallner had represented Rick Gibbons in a workers' compensation case against a Nebraska employer during a time when Gibbons was eligible for Social Security benefits. The combined benefits paid by workers' compensation and the Social Security Administration (SSA) cannot generally exceed 80 percent of the claimant's preinjury income. Any amount Gibbons paid in legal fees was not included in calculating the maximum benefits for which he was eligible.

While representing Gibbons, Gallner wrote three letters to the SSA, two of which falsely stated that Gallner and Gibbons had agreed that Gallner would receive 25 percent of Gibbons' workers' compensation checks. A letter dated January 12, 1994, stated: "I have a contract to take 25% of $242.42 or $60.61 per week out of his workers compensation checks." Another letter, dated February 7, 1994, stated: "Our contract has been in effect since that time as has our entitlement to 25% of his weekly benefit."

The referee's report found that there had never been a contract or any type of agreement for Gallner to receive a portion of Gibbons' benefits. The referee concluded that Gallner never intended to take 25 percent of Gibbons' weekly benefits.

In August 1995, Gibbons' workers' compensation case was settled by Gallner for $110,000. A third letter was sent to the SSA stating that from the final settlement, Gallner was to receive $27,500 in attorney fees. The referee found that Gallner never intended to take that amount. Instead, he had agreed to receive $17,500 from the final settlement. The referee found that the letters were untrue and designed to influence the SSA. No exceptions have been taken from the factual findings of the referee.

The referee concluded that Gallner's conduct violated the Code of Professional Responsibility and recommended suspension from the practice of law for a period of 1 year. On March 2, 2001, Gallner and the Counsel for Discipline filed a joint exception to the report of the referee. The parties requested that Gallner's suspension be indefinite, with no possibility of reinstatement for 6 months.

## ASSIGNMENT OF ERROR

Gallner asserts that the referee erred in recommending an excessive disciplinary sanction not warranted by the facts of this case. Gallner claims that this court should impose the same sanction as that imposed by the Iowa Supreme Court, a 6-month suspension.

## ANALYSIS

■ Disciplinary charges against an attorney must be established by clear and convincing evidence. *State ex rel. NSBA v. Flores*, 261 Neb. 256, 622 N.W.2d 632 (2001). Neb. Ct. R. of Discipline 10(L) (rev. 2001) provides: "If no exceptions are filed, the Court, in its discretion, may consider the [referee's] findings final and conclusive . . . ." Based upon the factual findings in the referee's report, which we consider to be final and conclusive, we conclude that the amended formal charges are supported by clear and convincing evidence. See *State ex rel. NSBA v. Jensen*, 260 Neb. 803, 619 N.W.2d 840 (2000).

Both Gallner and the Counsel for Discipline ask that this court impose the same sanction as the Iowa Supreme Court, which

suspended the license of Gallner to practice law with no possibility of reinstatement for 6 months, instead of the referee's recommended suspension of 1 year. Although a judicial determination of attorney misconduct in another state is generally given conclusive effect, this court is entitled, in a reciprocal discipline action, to independently assess the facts and independently determine the appropriate disciplinary action to be taken against the attorney in this state. *State ex rel. NSBA v. Radosevich*, 243 Neb. 625, 501 N.W.2d 308 (1993).

 To determine whether and to what extent discipline should be imposed in an attorney proceeding, we consider the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance and reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the respondent generally, and (6) the respondent's present or future fitness to continue in the practice of law. *State ex rel. NSBA v. Aupperle*, 256 Neb. 953, 594 N.W.2d 602 (1999). Each disciplinary case must be evaluated individually in light of its particular facts and circumstances. *State ex rel. NSBA v. Pullen*, 260 Neb. 125, 615 N.W.2d 474 (2000). The propriety of a sanction must be considered with reference to the sanctions imposed by this court in prior cases presenting similar circumstances. *State ex rel. NSBA v. Jensen, supra.*

In *Aupperle*, an attorney received a suspension of his license with no possibility of reinstatement for 2 years as a sanction for repeated misrepresentations to clients. In *State ex rel. NSBA v. Scott*, 252 Neb. 698, 564 N.W.2d 588 (1997), a 1-year suspension was given for neglecting a client's case and making several misrepresentations to a client and others about the status of a case. Some of Scott's misrepresentations were made to a representative of the Department of Veterans Affairs. The department was claiming a right to subrogation of Scott's client's claims for workers' compensation, and Scott repeatedly told the department that the case was still pending even though it had been dismissed.

*Scott* and the case at bar are similar in that the attorneys did not make representations to benefit themselves. In *Scott*, we stated:

In the present case, we recognize that mitigating circumstances certainly exist: (1) Scott's actions were done in an effort to help maintain the viability of Wheeler's workers'

compensation claim and not to benefit himself, (2) at no time did Scott receive a fee for representing Wheeler in the compensation matter, and (3) Scott's conduct did not result in injury to Wheeler. However, these mitigating factors fail to overcome the fact that Scott deliberately lied to a court and to Veterans Affairs. Although we encourage all attorneys to zealously represent their clients, such advice cannot be construed to permit attorneys to deceive a court of law or other interested entities.

252 Neb. at 704, 564 N.W.2d at 592.

Gallner asserts several mitigating factors. He claims that the letters to the SSA were meant to benefit his client and not himself and that he did not intend to deceive anyone with the letters. Gallner also claims he had a right to take a discounted fee without informing the SSA.

In determining the appropriate discipline, we note the following mitigating factors: Gallner has been cooperative throughout this proceeding. He has acknowledged his mistake and expressed regret and remorse. Gallner did not receive any personal benefit from his misrepresentations. The referee concluded that "[Gallner's] violations arose from the over-zealous representation of his client's interests, and not from any benefit for himself." Indeed, Gallner's misconduct arose when he reduced his fee to give a double benefit to his client in terms of greater recovery and greater Social Security benefits. No other instance of misconduct was proved, and no evidence of other disciplinary complaints was presented.

## CONCLUSION

The facts, which are not disputed, show clearly and convincingly that Gallner violated his oath of office as an attorney, as well as DR 1-102(A)(1), (4), and (5) and DR 7-102(A)(5) of the Code of Professional Responsibility. We adopt the referee's recommendation that Gallner's license to practice law in the State of Nebraska be suspended for 1 year. The suspension shall be retroactive to the date of Gallner's temporary suspension, which occurred on February 14, 2001.

JUDGMENT OF SUSPENSION.