STATE OF NEBRASKA EX REL. COUNSEL FOR DISCIPLINE
OF THE NEBRASKA SUPREME COURT, RELATOR, V.
JAMES E. MITCHELL, RESPONDENT.
670 N.W.2d 768

Filed September 19, 2003.   No. S-02-1507.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.

## INTRODUCTION

On December 31, 2002, formal charges were filed by the office of the Counsel for Discipline of the Nebraska Supreme Court, relator, against respondent, James E. Mitchell. Respondent's answer disputed certain of the allegations. A referee was appointed and heard evidence. The referee filed a report on August 1, 2003. With respect to the single count in the formal charges, the referee concluded that respondent's conduct had breached disciplinary rules of the Code of Professional Responsibility and his oath as an attorney. See Neb. Rev. Stat. § 7-104 (Reissue 1997). The referee recommended the respondent be publicly reprimanded. Neither relator nor respondent filed exceptions to the referee's report. Relator filed a motion for judgment on the pleadings under Neb. Ct. R. of Discipline 10(L) (rev. 2001).

## FACTS

Respondent was admitted to the practice of law in the State of Nebraska in 1995. He has practiced in Douglas County.

The substance of the referee's findings may be summarized as follows: The single count of the formal charges surrounds respondent's handling of a case involving a client who was charged with violating a protection order. The detailed facts as found by the referee are not disputed by the parties and are not repeated here. In sum, respondent was engaged to represent Miguel Ramos in Douglas County Court. Ramos was charged with violating the protection order. Because Ramos was a non-U.S. citizen, the referee found that the charges could affect Ramos' immigration status with the Immigration and Naturalization Service (INS). Trial

on the charges was scheduled for April 25, 2001. Respondent sought a continuance because he felt that he needed a third-party witness to testify on behalf of Ramos and the witness was unavailable on the scheduled trial date. On April 20, the county court judge denied respondent's request for a continuance. On the same day, respondent filed a "Notice of Intent to Prosecute Appeal" of the county court's order denying his requested continuance. The referee found that respondent believed the filing of the notice would deprive the county court of jurisdiction.

The referee further found that on April 25, 2001, the respondent was "summarily summoned to [the county court judge's] Courtroom and informed in no uncertain terms by [the judge] that the trial would proceed on that date." The referee found that respondent was not prepared for trial. The trial proceeded, and the referee further found that respondent "chose not to represent . . . Ramos at the trial." According to the referee's report, respondent elected to stand on his notice of intent to appeal and to take the position that the county court had no jurisdiction to proceed with the trial. Ramos was convicted by the county court.

Respondent appealed the convictions to the Douglas County District Court, and the referee found that respondent "fully perfected that appeal and in fact filed a Brief with [the district court]." The district court upheld Ramos' convictions.

The referee found that respondent then filed an appeal with the Nebraska Court of Appeals. Respondent failed to file a brief with the Court of Appeals, and the appeal was dismissed due to respondent's failure to file a brief. See *State v. Ramos*, 10 Neb. App. lv (Nos. A-01-1095, A-01-1096, Feb. 4, 2002).

The referee found that during the entirety of the pendency of the county court proceedings, Ramos was incarcerated and "was under a cloud concerning his resident alien status by the INS at all times material hereto." The referee further found that Ramos wanted to challenge his convictions on the protection order charges and "wanted to stay in the country as long as possible (even though that might have been in jail)." In August 2001, subsequent to his convictions by the county court on the violation of protection order charges, Ramos was deported.

The referee found by clear and convincing evidence that as a result of respondent's failure to fully or adequately represent

Ramos at trial or on appeal, respondent had violated Canon 1, DR 1-102(A)(1) (disciplinary rule violation), and DR 1-102(A)(6) (conduct adversely reflecting on fitness to practice law); Canon 6, DR 6-101(A)(2) (inadequate preparation), and DR 6-101(A)(3) (neglect); Canon 7, DR 7-101(A)(1) (failure to seek client's lawful objectives), DR 7-101(A)(2) (failure to carry out contract of employment with client for professional services), and DR 7-101(A)(3) (prejudice or damage to client during professional relationship). The referee also found that respondent had violated his oath of office as an attorney.

With respect to the sanction which ought to be imposed for the foregoing violations, and considering the mitigating factors the referee found present in the case, the referee recommended the respondent should be publicly reprimanded.

## ANALYSIS

In view of the fact that neither party filed written exceptions to the referee's report, relator filed a motion for judgment on the pleadings under rule 10(L). When no exceptions are filed, the Nebraska Supreme Court may consider the referee's findings final and conclusive. *State ex rel. Counsel for Dis. v. Hart*, 265 Neb. 649, 658 N.W.2d 632 (2003). Based upon the findings in the referee's report, which we consider to be final and conclusive, we conclude that the formal charges are supported by clear and convincing evidence, and the motion for judgment on the pleadings is granted.

A proceeding to discipline an attorney is a trial de novo on the record. *State ex rel. Counsel for Dis. v. Sipple*, 265 Neb. 890, 660 N.W.2d 502 (2003). To sustain a charge in a disciplinary proceeding against an attorney, a charge must be established by clear and convincing evidence. *Id.* Violation of a disciplinary rule concerning the practice of law is a ground for discipline. *Hart, supra.*

Based on the record and the undisputed findings of the referee, we find that the above-referenced facts have been established by clear and convincing evidence. Based on the foregoing evidence, we conclude that by virtue of respondent's conduct, respondent has violated DR 1-102(A)(1) and (6), DR 6-101(A)(2) and (3), and DR 7-101(A)(1), (2), and (3). We further conclude that respondent has violated the attorney's oath of office. See § 7-104.

We have stated that " '[t]he basic issues in a disciplinary proceeding against a lawyer are whether discipline should be imposed and, if so, the type of discipline appropriate under the circumstances.' " *State ex rel. NSBA v. Frank*, 262 Neb. 299, 304, 631 N.W.2d 485, 490 (2001) (quoting *State ex rel. NSBA v. Brown*, 251 Neb. 815, 560 N.W.2d 123 (1997)). Neb. Ct. R. of Discipline 4 (rev. 2001) provides that the following may be considered by the court as sanctions for attorney misconduct: (1) disbarment; (2) suspension for a fixed period of time; (3) probation in lieu of suspension, on such terms as the court may designate; (4) censure and reprimand; or (5) temporary suspension.

With respect to the imposition of attorney discipline in an individual case, we have stated that " '[e]ach case justifying discipline of an attorney must be evaluated individually in light of the particular facts and circumstances of that case.' " *Frank*, 262 Neb. at 304, 631 N.W.2d at 490 (quoting *State ex rel. NSBA v. Rothery*, 260 Neb. 762, 619 N.W.2d 590 (2000)). For purposes of determining the proper discipline of an attorney, this court considers the attorney's acts both underlying the events of the case and throughout the proceeding. *Frank, supra*; *State ex rel. NSBA v. Freese*, 259 Neb. 530, 611 N.W.2d 80 (2000); *State ex rel. NSBA v. Denton*, 258 Neb. 600, 604 N.W.2d 832 (2000).

To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law. *Hart, supra*; *State ex rel. NSBA v. Gallner*, 263 Neb. 135, 638 N.W.2d 819 (2002).

We have noted that the determination of an appropriate penalty to be imposed on an attorney requires consideration of any mitigating factors. *Id.*

The evidence in the present case establishes, inter alia, that respondent neglected a legal matter entrusted to him, failed to pursue Ramos' legal objectives, and acted in a manner which prejudiced Ramos. As mitigating factors, we note the isolated nature of respondent's misconduct, his cooperation during the disciplinary proceedings, and his lack of any prior disciplinary

record. Specifically, the referee found that the respondent had "learned a lesson in this whole matter . . . and seems willing to reform and be more diligent in the future."

We have considered the record, the findings which have been established by clear and convincing evidence, and the applicable law. Upon due consideration, the court agrees with the referee's recommendation and finds that respondent should be publicly reprimanded.

## CONCLUSION

The motion for judgment on the pleadings is granted. It is the judgment of this court that respondent should be and is hereby publicly reprimanded. Respondent is directed to pay costs and expenses in accordance with Neb. Rev. Stat. §§ 7-114 and 7-115 (Reissue 1997) and Neb. Ct. R. of Discipline 23(B) (rev. 2001).

JUDGMENT OF PUBLIC REPRIMAND.