769 N.W.2d 378 (2009)
278 Neb. 204
STATE of Nebraska ex rel. Counsel for Discipline of the Nebraska Supreme Court, relator,
v.
Lyle J. KOENIG, respondent.
No. S-08-128.
Supreme Court of Nebraska.
July 31, 2009.
*381 Kent L. Frobish, Assistant Counsel for Discipline, for relator.
Clinton J. Gatz, Norfolk, for respondent.
Lyle J. Koenig, pro se.
HEAVICAN, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
PER CURIAM.
The office of the Counsel for Discipline of the Nebraska Supreme Court filed formal charges against respondent, Lyle J. Koenig. Following a hearing, the referee concluded that Koenig had violated the Nebraska Rules of Professional Conduct and Neb.Rev.Stat. § 7-104 (Reissue 2007). The referee recommended suspension from the practice of law for 1 year. Koenig takes exception to the referee's findings and recommended discipline.
We conclude there is clear and convincing evidence that Koenig violated the rules of professional conduct and, for the reasons set forth, suspend him from the practice of law for 120 days.

*382 FACTS
Koenig was admitted to the practice of law in the State of Nebraska on February 28, 1972, and, at all relevant times, was engaged in the private practice of law in Beatrice, Nebraska. At his law office in Beatrice, Koenig employed a paralegal, who later became an associate in his practice, named Dustin A. Garrison. Garrison was cited by the Nebraska State Patrol for driving without a valid registration or proper proof of insurance. Following a 10-day grace period, a criminal complaint was filed against Garrison in county court, alleging that Garrison was operating his motor vehicle without proper registration and proof of insurance. Koenig agreed to represent Garrison and entered an appearance in the case.
Rick Schreiner, the chief deputy county attorney at the time, was assigned to Garrison's case. Koenig sent a letter to Schreiner regarding Garrison's case stating that the newly elected Gage County Attorney was in violation of the same registration law with which Garrison had been charged.
In his letter, Garrison included a photograph of the allegedly expired license plate and a copy of a "Motion to Appoint Special Prosecutor," which he said he would file if Garrison's case was not dismissed. The motion alleged that the "county attorney is presently in violation of the law, in that his personal vehicle is not properly registered in Gage County, Nebraska." Koenig concluded his letter by stating, "Obviously, these motions are only proposed. Can't you dismiss [this case]? Our lips, of course, are forever sealed if [Garrison's] case gets dismissed."
Four days later, Koenig sent a second letter to Schreiner, asking, "Does this case have any settlement possibility before we file the enclosures?" Enclosed with the letter was a motion to dismiss for selective prosecution which alleged that the county attorney, "at least until recently, was operating his motor vehicle without valid registration in Gage County, Nebraska."
Koenig admitted that he hoped the information regarding the county attorney's alleged violation would persuade Schreiner to dismiss the charges against Garrison. Koenig also stated that he meant the sealed lips remark only as a joke and thought Schreiner would realize that Koenig "was trying to inject a little humor into this [situation]."
The State of Nebraska filed a motion for the appointment of a special prosecutor in Garrison's case. The motion was granted, and a special prosecutor completed the case. Garrison pled no contest to the expired plate charge, and the no proof of insurance charge was dismissed. Koenig never filed any of the motions and never published any information regarding the county attorney's vehicle registration.
Three months after the case was closed, formal charges were filed against Koenig. The formal charges alleged violations of § 7-104 and Neb. Ct. R. of Prof. Cond. §§ 3-503.5(a)(1), 3-504.4(a), and 3-508.4(a), (b), (d), and (e). A referee was appointed, and a disciplinary hearing was held. The referee found by clear and convincing evidence that Koenig violated his oath of office as an attorney as set forth in § 7-104 and §§ 3-503.5(a)(1) and 3-508.4(a), (b), (d), and (e). The referee made no finding with respect to § 3-504.4(a), and no exceptions were filed in that regard. The referee recommended that Koenig be suspended from the practice of law for 1 year.
Koenig has been disciplined on two previous occasions. In 1998, Koenig was privately reprimanded for false allegations and assertions made in the district court for Gage County, Nebraska. In 2002, we *383 suspended Koenig from the practice of law for 90 days after he misrepresented the status of estate proceedings and the legal status of real property.[1]

ASSIGNMENTS OF ERROR
Koenig makes five separate assignments of error which can generally be stated as two: (1) The referee erred in finding that Koenig violated the Nebraska Rules of Professional Conduct and § 7-104 and (2) the referee erred in his recommended sanction of a 1-year suspension.

STANDARD OF REVIEW
A proceeding to discipline an attorney is a trial de novo on the record, in which the Nebraska Supreme Court reaches a conclusion independent of the findings of the referee.[2] When credible evidence is in conflict on material issues of fact, however, the court considers and may give weight to the fact that the referee heard and observed the witnesses and accepted one version of the facts rather than another.[3]

ANALYSIS

VIOLATIONS OF RULES OF PROFESSIONAL CONDUCT
We begin our analysis with whether there is clear and convincing evidence that Koenig's actions violated § 3-508.4(a), (d), or (e). In order to sustain a charge in a lawyer discipline proceeding, we must find the charge to be established by clear and convincing evidence.[4] Section 3-508.4 deals with attorney misconduct and provides, in relevant part:
It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct[,] knowingly assist or induce another to do so or do so through the acts of another;
....
(d) engage in conduct that is prejudicial to the administration of justice....
(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law.
With regard to § 3-508.4(d), we conclude that there is clear and convincing evidence that Koenig's conduct was prejudicial to the administration of justice. Koenig contends that the letters he sent to Schreiner, threatening to reveal the county attorney's alleged violation of the law, were an attempt to negotiate a plea agreement on behalf of his client. We agree with Koenig that attorneys have the right to negotiate on behalf of their clients and are even charged by the Nebraska Rules of Professional Conduct to zealously assert their client's position.[5] A lawyer must zealously advocate, however, "under the rules of the adversary system."[6] While Koenig's conduct might be considered zealous advocating of his client's position, it does not fall within the ethical bounds of our adversary system.
A lawyer, for example, can argue to a prosecutor that his or her client should not be prosecuted for an offense because "everybody else is doing the same behavior" *384 and no other prosecutions are occurring. Or, it is even within the bounds of our ethical rules to argue, that a client should not be prosecuted for something because the prosecutor is allegedly doing the same prohibited behavior. But it is altogether differentand a violation of the rules of professional conductto offer to a prosecutor to stay quiet about something the prosecutor has done (or is doing) in exchange for dismissing a charge that has been lodged against one's client. It does not take a great deal of imagination to see how this type of behavior taints the adversary system and prejudices the administration of justice.
In this instance, Koenig offered to keep mum about what he believed to be illegal conduct by the county attorney in exchange for the dismissal of the charges against Garrison. Koenig's actions were, in effect, a conditional threat to disclose the county attorney's alleged violation. This a lawyer cannot do. And this conduct is not any less egregious because it occurred in the context of plea negotiations.
Koenig also argues that the letters, at least in part, were an attempt to "inject a little humor" into the case. In particular, Koenig points to his statement at the end of his first letter, "[c]an't you dismiss [this case]? Our lips, of course, are forever sealed if [Garrison's] case gets dismissed." Koenig contends that the statement was meant as a joke and was used in a "lighthearted, jesting, humorous way."[7] Koenig states that he "misjudged" Schreiner by attributing to him "more understanding about the nuances of the English language than [Schreiner] apparently possesses."[8]
We do not find Koenig's claim to be credible. Nor did the referee, who heard and observed the witnesses. Koenig's purported "joke" resulted in the appointment of a special prosecutor, consistent with the motion Koenig threatened to file. Perhaps Koenig did not actually intend to file any of the motions he prepared. But a reasonable person in Schreiner's position could not help but take Koenig's threats seriously. No onenot the county attorney or the Counsel for Discipline or the referee or the members of this courthas believed Koenig's claim that he was only joking. There is clear and convincing evidence that Koenig's conduct was prejudicial to the administration of justice, and we therefore conclude that Koenig violated § 3-508.4(d).
For similar reasons, we find clear and convincing evidence that Koenig violated § 3-508.4(e). Section 3-508.4(e) prohibits the mere suggestion that a lawyer can or will act to exert improper influence on a public official through unethical or unlawful means. Based on the record before us, we conclude that there is clear and convincing evidence that Koenig stated or implied an ability to improperly influence Schreiner, a public official, through unethical means. Inherent in drafting and sending the letters at issue is the suggestion that Koenig would act to exert improper influence on Schreiner and the county attorney through unethical means. Accordingly, we conclude that Koenig violated § 3-508.4(e). And as for § 3-508.4(a), we conclude that Koenig violated it by virtue of his violation of § 3-508.4(d) and (e).
In addition to our determination that Koenig violated the Nebraska Rules of Professional Conduct, we also conclude that Koenig's misconduct reflects adversely upon his fitness to practice law. We therefore determine that there is clear and convincing evidence that Koenig violated *385 his oath of office as an attorney under § 7-104.
Finally, we turn to § 3-508.4(b) and whether Koenig committed a criminal act. Section 3-508.4(b) deals with criminal acts and provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The referee concluded that there was clear and convincing evidence that Koenig committed attempted bribery and consequently violated § 3-508.4(b). We conclude, however, in our review of this particular case, that there was insufficient evidence to determine whether Koenig committed a criminal act.
In this case, the State of Nebraska has not brought a charge of bribery or attempted bribery against Koenig. There has been no trial or finding by any court that Koenig was guilty of any crime associated with the misconduct at issue. We decline to determine or hypothesize whether Koenig's misconduct in this case would constitute a criminal acti.e., an act that is deemed criminal, beyond a reasonable doubt. For similar reasons, we also conclude that there is insufficient evidence to show that Koenig violated § 3-503.5(a) which provides that "[a] lawyer shall not: (1) seek to influence a judge, juror, prospective juror or other official by means prohibited by law." We therefore conclude that Koenig did not violate §§ 3-503.5(a)(1) and 3-508.4(b).
Although there is not clear and convincing evidence to show that Koenig violated §§ 3-503.5(a)(1) or 3-508.4(b), we nevertheless conclude that Koenig's conduct adversely reflects on his fitness to practice law and is subject to discipline under the Nebraska Rules of Professional Conduct.

DISCIPLINE IMPOSED
To determine whether and to what extent discipline should be imposed in a lawyer discipline proceeding, this court considers the following factors: (1) the nature of the offense, (2) the need for deterring others, (3) the maintenance of the reputation of the bar as a whole, (4) the protection of the public, (5) the attitude of the offender generally, and (6) the offender's present or future fitness to continue in the practice of law.[9]
With respect to the imposition of attorney discipline in an individual case, we evaluate each attorney discipline case in light of its particular facts and circumstances.[10] This court will consider the attorney's acts both underlying the alleged misconduct and throughout the proceeding.[11] The determination of an appropriate penalty to be imposed also requires the consideration of any aggravating or mitigating factors.[12]
In the present case, we conclude that Koenig's conduct with respect to these matters violated several disciplinary rules and his oath of office as an attorney. As an aggravating factor, we note that Koenig has been disciplined on two previous occasions. In 1998, Koenig was privately reprimanded for false allegations and assertions made in the district court for Gage County. And in 2002, we suspended Koenig from the practice of law for 90 days after he misrepresented the status of estate proceedings and the legal status of *386 real property.[13] Another factor weighing against Koenig is his lack of willingness to take responsibility for his conduct, which he characterizes as a "joke." Koenig's failure to take responsibility for his conduct shows not only his disregard for the seriousness of his behavior, but also a failure to understand and appreciate the legal import of his actions.
Finally, we note that mitigating circumstances do exist. The record shows Koenig's cooperation during the disciplinary proceeding, his continuing commitment to the legal profession, and the lack of evidence of any harm to clients.
Based upon a consideration of all of the aggravating and mitigating circumstances in the present case, we conclude that Koenig should be and hereby is suspended from the practice of law for 120 days, effective immediately.

CONCLUSION
It is the judgment of this court that Koenig be suspended from the practice of law for a period of 120 days, effective immediately. Koenig shall comply with Neb. Ct. R. § 3-316 and, upon failure to do so, shall be subject to a punishment for contempt of this court. At the end of the 120-day suspension period, Koenig may apply to be reinstated to the practice of law, provided that he has demonstrated his compliance with § 3-316 and further provided that the Counsel for Discipline has not notified this court that Koenig has violated any disciplinary rule during his suspension.
JUDGMENT OF SUSPENSION.
CONNOLLY, J., not participating.
NOTES
[1] State ex rel. Counsel for Dis. v. Koenig, 264 Neb. 474, 647 N.W.2d 653 (2002).
[2] State ex rel. Counsel for Dis. v. Wintroub, 277 Neb. 787, 765 N.W.2d 482 (2009).
[3] Id.
[4] See id.
[5] Nebraska Rules of Professional Conduct, Preamble ¶ 2.
[6] Id.
[7] Reply brief for respondent at 3.
[8] Id. at 4.
[9] State ex rel. Counsel for Dis. v. Wickenkamp, 277 Neb. 16, 759 N.W.2d 492 (2009).
[10] See State ex rel. Counsel for Dis. v. Riskowski, 272 Neb. 781, 724 N.W.2d 813 (2006).
[11] See State ex rel. Counsel for Dis. v. Orr, 277 Neb. 102, 759 N.W.2d 702 (2009).
[12] See id.
[13] Koenig, supra note 1.